UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROGER GOULD, and DOLPHIN
KICKBOXING COMPANY,

                          Plaintiffs,

- against -

ILKB, LLC, MICHAEL PARRELLA, RYAN
HEALY, and SCOTT FERRARI, each
individually, and ILKB TOO, LLC, DANIEL
CASTELLINI, and SHAUN YORK, each as
successor by merger to ILKB, LLC,

                          Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:20-cv-5154 (DRH) (JMW)

**APPEARANCES**

**ROSENBERG & ESTIS, P.C.**
Attorneys for Plaintiffs
733 Third Avenue
New York, NY 10017
By:    John D. Giampolo, Esq.
        Justin Scott Weitzman, Esq.

**GORDON REES SCULLY MANSUKHANI, LLP**
Attorneys for Defendants ILKB, LLC, Michael Parrella, ILKB Too, LLC, Daniel
Castellini, and Shaun York
1 Battery Park Plaza, 28th Floor
New York, NY 10004
By:    Peter G. Siachos, Esq.
        David Oxamendi, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiffs Roger Gould and Dolphin Kickboxing Company (collectively,

"Plaintiffs") bring seven causes of action against Defendants ILKB, LLC ("ILKB"),

Michael Parrella, Ryan Healy, and Scott Ferrari (together the "Predecessor

Defendants"): violation of the New York State Franchise Sales Act, N.Y. Gen. Bus. L. § 680 et seq. ("NYSFSA"); breach of contract; common law fraud; negligent misrepresentation; violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 et. seq. ("ACFA"); tortious interference; and alter ego, veil piercing and agency liability.  Plaintiffs also bring one cause of action—successor liability—against Defendants ILKB Too, LLC ("ILKB Too"), Daniel Castellini, and Shaun York, each as successor by merger to ILKB (together, the "Successor Defendants," and with the Predecessor Defendants, "Defendants").

Presently before the Court is Defendants ILKB, Parrella, ILKB Too, Castellini, and York's (the "Moving Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  For the reasons stated below, their motion is granted in part and denied in part.

## BACKGROUND

The following facts from the Complaint, the exhibits attached thereto, and other materials properly considered on the Moving Defendants' motion are taken as true for the purposes of this Order.

Roger Gould ("Gould") alleges Predecessor Defendants misrepresented and omitted material information about ILKB, inducing him to purchase and run an ILKB franchise.  (Compl. ¶ 15 [DE 1]).  On March 9, 2015, Scott Ferrari, President and Director of Franchise Development at ILKB, met Gould and stated:

1. "ILKB was the 'hottest' fitness franchise around and that Gould would 'make a ton of money,'"[1] and

2. "ILKB had marketing expertise that would generate all the leads necessary for an ILKB studio to be profitable."

(*Id.* ¶ 16). Ferrari then sent Gould an ILKB Financial Disclosure Document dated April 11, 2014, that allegedly was not registered in New York State and contained misrepresentations and omissions. They include:

3. stating "there was no bankruptcy information to report and omitt[ing] the fact that ILKB franchise owner and founder, [Michael] Parrella, had filed for bankruptcy and had been discharged in 2008";

4. stating "there was no litigation to report and omitted lawsuits in which Parrella or FC Online Marketing, LLC, the predecessor affiliate of ILKB, had been the charged with fraud, violation of franchise laws or theft of services";

5. showing "buildout expenses to be a maximum of no more than $147,500";

6. stating "that ILKB and FCOM received no revenue, rebates or 'kickbacks' from vendors who sold products or services to franchisees"; and

7. omitting "the fact that five ILKB franchised units had closed in 2014."

(*Id.* ¶ 18). Later in March 2015, Ferrari allegedly added:

8. "ILKB franchisees, on average, made over $130,000 a year in profits from a location";

9. "If Gould bought three territories, ILKB would conduct initial training at his location";

---

[1] The Court refers to each numbered misrepresentation and omission as a "Representation."

10. "If Gould purchased an ILKB franchise, he would make his investment back, make at least a few hundred thousand dollars profit, and have the opportunity to sell his ILKB franchise business back for multiples of what he purchased it for";

11. "ILKB corporate had an 'unheard of' marketing expertise and does all the marketing to generate all the leads necessary for an ILKB studio to be profitable"; and

12. "ILKB corporate trains instructors multiple times a year for each ILKB studio and visits each studio location to make sure they are operating 'well above par.'"

(*Id.* ¶ 19).  On March 31, 2015, Ferrari gave Gould a "sample ILKB franchise business plan" that he claimed franchisees had used to get bank loans.  (*Id.* ¶ 20).  The plan showed:

13. "revenues in excess of $600,000 a year in the second year of operation . . . and expenses of $25,000 per month (including about $9,000 per month in salaries for employees)," "profits of over $190,000 in the second and third years of operations," and "buildout expenses at $100,000."

(*Id.*).

On an unknown date, the Predecessor Defendants also allegedly misrepresented and failed to disclose that

14. "ILKB would retain profits at the expense of franchisees through Defendants' lead generation program."

(*Id.* ¶ 21).

On April 16, 2015, the Predecessor Defendants invited Gould and other prospective franchisees to New York for its "Discovery Day."  (*Id.* ¶ 22).  Ryan Healy, who identified himself as ILKB's Vice President of Franchise Operations, allegedly stated

15. "Gould would make $200,000 in profit from one ILKB franchise location in his second year of operations."

(*Id.*).   Parrella and Healy also allegedly added that:

16. "[M]ost franchisees break even within two to four months of opening";

17. "The ILKB franchise owner did not have to work full time in the business and the studio could be run successfully as an absentee owner";

18. "ILKB corporate would bring in prospective customers for each ILKB franchise studio and generate enough leads for each franchisee to be as profitable as promised";

19. "ILKB had signed deals with Amazon and Living Social to bring franchisees more leads and therefore more revenue";

20. "38-55% of leads from FaceBook and Groupon customers converted to full paying members of ILKB franchise studios";

21. "The ILKB business was not seasonal";

22. "It is common for an individual ILKB franchise studio location to sell hundreds to thousands of deals through Groupon and when those leads enter ILKB's 'proven sales process,' more than 50% of them convert into full members of the ILKB franchise studio. ILKB corporate offers this to its franchise studios combined with its multi-layered online and offline marketing systems";

23. "No other fitness franchise provides as much done-for-you marketing support"; and

24. "[T]he only reason an ILKB franchisee would fail would be from not following ILKB corporate's system."

(*Id.* ¶¶ 23–24).

On April 28, 2015, Plaintiff Dolphin Kickboxing Company ("Dolphin")—an Arizona corporation Gould formed to purchase and run a franchise—signed a Franchise Agreement to open an ILKB studio covering three Arizona locations.  (*Id.*

¶ 25; *see* Franchise Agreement ("Fr. Agmt."), Ex. 2 [DE 35-2] to Decl. of Roger Gould [DE 35][2]. Gould spent more than $225,000 in building out a kickboxing studio in Gilbert, Arizona and opened it on April 10, 2017. (*Id.* ¶¶ 25–26). Gould ended up having to do his own marketing after ILKB failed to provide support to that end. (*Id.*). The studio began losing money "rapidly" – ultimately $10,000 a month during the fourth quarter of 2018. (*Id.* ¶ 27). Gould then started investigating the Predecessor Defendants and learned the alleged falsity of their representations. (*Id.*).

On January 9, 2019, Plaintiffs wrote to the Predecessor Defendants' counsel demanding, among other things, that they begin the dispute resolution process as set forth in the Franchise Agreement and that Predecessor Defendants purchase the Gilbert studio and assume its lease. (*Id.* ¶ 35(a), (c)). After they declined, Plaintiffs closed the studio on January 31, 2019. (*Id.* ¶ 36). With the space still under lease, Plaintiffs "designed a concept for a multi-use facility that would be called" Encore Group Fitness – leading the Predecessors Defendants to sue Plaintiffs for doing so. (*Id.* ¶¶ 37–38). Plaintiffs do not plead any further details about this legal action.

In March 2019, Plaintiffs commenced an arbitration pursuant to the Franchise Agreement against the Predecessor Defendants in the JAMS Resolution Center, JAMS Case No. 1425029100. (*Id.* ¶¶ 2, 42). The Predecessor Defendants, however, have refused to pay their portion of the required arbitration fees, and the proceeding has been held in abeyance. (*Id.* ¶ 44).

---

[2]     The Court properly considers the Franchise Agreement because the Complaint incorporates it by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–55 (2d Cir. 2002).

Plaintiffs further allege that, as of June 26, 2020, ILKB Too—through its limited liability company members Castellini, York, and Parrella—acquired "all assets" and had taken "full control" of ILKB, thereby becoming its successor. (*Id.* ¶¶ 10, 46–47). Castellini is ILKB Too's Chief Executive Officer and York its Chief Operating Officer. (*Id.*).

Plaintiffs brought this suit on October 26, 2020. [DE 1]. On December 28, 2021, the Moving Defendants filed the instant motion to dismiss. [DE 33].

## DISCUSSION

The Court will address the issues in the following order: (I) personal jurisdiction over the Successor Defendants; and (II) Plaintiffs' failure to state a claim.

## I.    Personal Jurisdiction

The Successor Defendants move the Court pursuant to Rule 12(b)(2) to dismiss them for lack of personal jurisdiction, both specific and general. Plaintiffs respond that personal jurisdiction exists pursuant to successor liability.

### A.    Legal Standard

Plaintiffs bear the burden of establishing the Court's personal jurisdiction over defendants moving to dismiss under Rule 12(b)(2). *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where the parties have not yet conducted discovery, a plaintiff may "mak[e her] prima facie showing of [personal] jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 285 (E.D.N.Y. 2005). As such, the Court must view the pleadings in the light most favorable to the plaintiff, *Sills v. The Ronald Reagan Presidential Found., Inc.*, 2009 WL 1490852, *5

(S.D.N.Y. May 27, 2009), "may rely on additional materials outside the pleadings," *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016), and resolve doubts "in the plaintiff's favor, notwithstanding a controverting presentation [of evidence] by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993).

A court need not, however, "draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) and *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). A plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini* 148 F.3d at 185); *accord Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 Fed. App'x 768, 769 (2d Cir. 2014) ("[A plaintiff] must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone.").

## B.    Analysis

In their opening motion papers, the Successor Defendants contest both general and specific personal jurisdiction. Def. Mem. at 7–16 [DE 33]. A court's exercise of general jurisdiction—"extend[ing] to 'any and all claims' brought against a defendant"— occurs "only when a defendant is essentially at home in the State"

where the court sits. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific, or "case-linked," jurisdiction arises from the "affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919. Plaintiffs make no argument under either of these doctrines. Pl. Opp. at 18–27 [DE 34].

Rather, Plaintiffs contend personal jurisdiction over the Successor Defendants exists "under the theory of successor liability." *Id.* New York recognizes that, "in certain circumstances[,] a successor corporation 'may inherit its predecessor's jurisdictional status.'" *Semenetz v. Sherling & Walden, Inc.*, 21 A.D.3d 1138, 1140 (N.Y. App. Div., 3d Dep't 2005), *aff'd*, 7 N.Y.3d 194 (N.Y. 2006); *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111, at *5 (S.D.N.Y. Sept. 9, 2010) (asserting personal jurisdiction over limited liability companies because "[a]n allegation of successor liability against an entity whose predecessor is subject to personal jurisdiction can provide personal jurisdiction over the successor entity" (citing *Libutti v. United States*, 178 F.3d 114, 124–25 (2d Cir. 1999))). "It is well-settled" that, should the Successor Defendants be "successor[s] in interest to [an entity] over whom the Court has personal jurisdiction," they are thereby subject to the Court's jurisdiction "without regard to whether they had any other minimum contacts with the state." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 190 (E.D.N.Y. 2014) (Bianco, J.) (internal quotation marks omitted); *see Transfield ER Cape Ltd. v. Indus.*

*Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (citing and quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

Accordingly, whether the Court has personal jurisdiction over the Successor Defendants turns on whether the Plaintiffs have sufficiently alleged successor liability against them. *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 2022 WL 667606, at *9 (S.D.N.Y. Mar. 7, 2022). Because Plaintiffs have adequately pleaded successor liability, *see infra* Discussion Section II.B.7, the Court's personal jurisdiction over the Successor Defendants exists given the present state of the proceedings.

## II.    Failure to State a Claim

The Moving Defendants contend Plaintiffs have failed to state a claim on their NYSFSA, breach of contract, common law fraud, negligent misrepresentation, ACFA, tortious interference, veil piercing, and successor liability claims.

### A.    Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

### B.    Analysis

The Court organizes the Moving Defendants' arguments by cause of action, addressing them in the following order: (1) NYSFSA; (2) breach of contract;

(3) common law fraud and negligent misrepresentation (different claims argued jointly in the papers); (4) ACFA; (5) tortious interference; (6) piercing the corporate veil; and (7) successor liability.

### 1.   NYSFSA

Plaintiffs' NYSFSA claim is barred by the statute of limitations. "A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations." *Wang v. Palmisano*, 51 F. Supp. 3d 521, 530 (S.D.N.Y. 2014); *see Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) ("In diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." (quoting *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990))). New York state law subjects defendants to liability under the NYSFSA so long as plaintiffs bring the claim "before the expiration of three years after the act or transaction constituting the violation." N.Y. Gen. Bus. Law § 691(4). The limitations period for such claims "begins when the franchises were purchased." *W. Valley KB Venture, LLC v. ILKB LLC*, 2021 WL 4171918, at *3 (E.D.N.Y. Sept. 13, 2021) (quoting *Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 103–04 (2d Cir. 2014)); *Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 156 (N.Y. App. Div., 1st Dep't 1993); *Tri-City ValleyCats, Inc. v. Houston Astros Inc.*, 151 N.Y.S.3d 617 (Table), at *4 (N.Y. Sup. Ct., N.Y. Cnty. 2021)

Here, the parties entered the Franchise Agreement on April 28, 2015.  Compl. ¶ 25; *see* Fr. Agmt.  Plaintiffs brought this action on July 24, 2020.  Unless a tolling rule applies, then, the NYSFSA claim is untimely.  Plaintiffs argue that the pending arbitration, commenced pursuant to the Franchise Agreement in March 2019, tolls the limitations period.  *See* Compl. ¶¶ 42–43.  Yet Plaintiffs instituted the arbitration more than three years after they entered the Franchise Agreement, *i.e.*, after the limitations period had expired on their NYSFSA claim.  Accordingly, the NYSFSA could not have been tolled at that time because the statute had already run.

Plaintiffs' NYSFSA claim is untimely; the Moving Defendants' motion to dismiss this claim is granted.

### 2.    Breach of Contract

The Court disagrees with the Moving Defendants' contention that Plaintiffs "fail[ed] to plead they performed their obligations under the franchise agreement." Def. Mem. at 18; *see Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) ("Under New York law, a breach of contract claim requires proof of . . . adequate performance by the plaintiff . . . .").  The SAC reflects that they have.  By way of example, the breach of contract claim is premised partially upon Predecessor Defendants' breach of the dispute resolution provision.  Compl. ¶¶ 2, 35, 42, 44; *see* Fr. Agmt. § 14.2(a).  That section required the parties' disputes to be resolved through binding arbitration.  Fr. Agmt. § 14.2(a).  Plaintiffs allege they wrote to the Predecessor Defendants asking to initiate the process and ultimately initiated it themselves in the JAMS Resolution Center, JAMS Case No. 1425029100, in March

2019 – a proceeding Defendants have stonewalled by refusing to pay their share of the arbitration fees. Compl. ¶¶ 42, 44. These facts render Plaintiffs' compliance with the Franchise Agreement's terms claim plausible.

The Moving Defendants next argue the claim fails because "Plaintiffs do not provide a copy of the contract, nor do they point to any specific provision of the contract that was allegedly breached." Def. Mem. at 23–24. Under federal law, a "[p]laintiff 'does not need to attach a copy of the alleged contract to his complaint or quote directly from the contract,' but instead must only allege the 'essential terms' of the contract." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15 v. Tightseal Constr. Inc.*, 2018 WL 3910827, at *10 (S.D.N.Y. Aug. 14, 2018) (quoting *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644–45 (S.D.N.Y. 2011)). Plaintiffs' Complaint alleges sufficient facts to put Defendants on notice of the contractual provisions underlying their breach of contract claim – namely, the arbitration and marketing provisions. Compl. ¶¶ 2, 26, 44, 60–61. And, in any event, Plaintiffs attach to their opposition brief a copy of the Franchise Agreement incorporated by reference into the Complaint. *See Chambers*, 282 F.3d at 152–55.

The Moving Defendants also argue that Gould has no right to assert a breach of contract claim because he is not a party to the Franchise Agreement. Plaintiffs do not contest this point nor do they argue that Gould still may assert a breach of contract claim as a nonparty. Accordingly, Gould lacks the privity necessary to assert a breach of contract claim. His claim is dismissed. *E.g.*, *Luckow v. RBG Design-*

*Build, Inc.*, 156 A.D.3d 1289, 1291 (N.Y. App. Div., 3d Dep't 2017).  Dolphin, by contrast, is a party to the contract and thus has the privity necessary to assert a breach of contract claim.

The Moving Defendants' motion to dismiss the breach of contract claim is granted with respect to Gould's claim and denied with respect to Dolphin's claim.

### 3.    Common Law Fraud and Negligent Misrepresentation

The Moving Defendants argue the causes of action for common law fraud and negligent misrepresentation together.  A common law fraud cause of action under New York law hinges on "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (N.Y. 2009).  A negligent misrepresentation cause of action under New York law arises where "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).

### a.    Dolphin's Claims

The Moving Defendants argue Dolphin has no viable fraud or negligent misrepresentation cause of action because Dolphin "did not exist at the time of the alleged misrepresentations or omissions" – meaning Dolphin could not "perceive or

be defrauded by" any alleged misrepresentations nor could the Predecessor Defendants "have intended that Dolphin [] would rely on" those representations.  Def. Mem. at 25–27; Def. Reply at 5–6 [DE 36].  Neither can Gould recover for Dolphin's losses, the Moving Defendants say, due to Dolphin's separate legal existence by virtue of its corporate form.  Def. Mem. at 25–27; Def. Reply at 5–6.

The Complaint alleges "Gould formed Dolphin Kickboxing Company" to conduct the "business of his 'iLoveKickboxing' franchise."  Compl. ¶¶ 4–5.  As reflected in the contract itself, Gould signed the Franchise Agreement on behalf of Dolphin and not personally.  *See* Fr. Agmt.  Consistent with that fact, the Moving Defendants emphasize that "Dolphin Kickboxing is the franchisee."  Def. Reply. at 6 (emphasis removed).  The Complaint alleges that the Predecessor Defendants disseminated a Financial Disclosure Document—from where Representations [3] through [7] originate—"to prospective franchisees prior to the purchase" in order to "assist [prospective franchisees] in making an informed decision whether to purchase the franchise."  Compl. ¶¶ 17, 18.  It is true that the Complaint fails to explicitly allege that the Predecessor Defendants directly gave Dolphin (the entity) the Financial Disclosure Document.  It is reasonable to infer that Dolphin did have a copy, however, because its "sole owner," Gould, did.  Even so, under well-settled New York law, a misrepresentation need not be "made directly to the plaintiff."  *Brackett v. Griswold*, 112 N.Y. 454, 467–68 (N.Y. 1889).  Rather, "the representations must have been made to influence the conduct . . . of a class of persons in which [the plaintiff] was included."  *Id.* at 471; *see Ultramares Corp. v. Touche*, 255 N.Y. 170,

187 (N.Y. 1931) ("A representation, even though knowingly false, does not constitute ground for an action of deceit unless made with the intent to be communicated to the persons or class of persons who act upon it to their prejudice."). As a franchisee—*i.e.*, a converted prospective franchisee—Dolphin is among the class of persons whom the Predecessor Defendants allegedly intended the Financial Disclosure Document to reach. Accordingly, Dolphin, in its own right, properly may assert a fraud claim. It may also assert a negligent misrepresentation claim because, as the Franchise Agreement reflects, there is "actual privity of contract between [Dolphin and the Predecessor Defendants] or a relationship so close as to approach that of privity." *See Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (N.Y. 1989).

### b.    Rule 9(b)

The Moving Defendants contend Plaintiffs' fraud and negligent misrepresentation allegations fail to meet Rule 9(b)'s heightened pleading standard. Def. Mem. at 19–20; *Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)); *Woori Bank v. Citigroup Inc.*, 2013 WL 1235648, at *5 (S.D.N.Y. Mar. 27, 2013). Rule 9(b) requires Plaintiffs to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd.*, 375 F.3d at 187. Representations [8] – [12] fail to do so because they do not

allege where nor the means by which Ferrari made the representations. *See* Compl. ¶ 19. Representation [14] fails because it does not name the speaker nor where or when the statement was made. *Id.* ¶ 21. Plaintiffs fails to satisfy Rule 9(b)'s heightened pleading requirements with respect to these Representations and therefore may not premise any fraud claims thereon. The remainder of Representations meet the particularity standard.

Plaintiffs must also plead scienter, "although [they] may do so generally." *E.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021). "Allegations supporting an inference of fraudulent intent frequently include defendant's statement that a fact exists or [that] an event will come to pass coupled with allegations that the fact did not exist or the event did not occur, and circumstances indicating that the statement was false when made." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 254 (S.D.N.Y. 2004) (internal quotation marks omitted). Plaintiffs allege that the Predecessor Defendants knew their statements—almost all of which derive from the alleged performance of other ILKB franchises, which knowledge is exclusive to the Predecessor Defendants— were false when made. Compl. ¶¶ 65, 69. The Court finds the Complaint plausibly alleges scienter. "[B]eing aware of facts that undercut the truth of their statements gives rise to a strong inference that [the Predecessor] Defendants intended to defraud Plaintiff[s] by making knowingly false representations." *W. Valley KB Venture, LLC*, 2021 WL 4171918, at *6 (alterations and internal quotation marks omitted) (finding the same allegations sufficient for scienter); *ILKB, LLC v. Singh*, 2021 WL 3565719,

at *6 (E.D.N.Y. Aug. 12, 2021) (same). Accordingly, the surviving Representations are not dismissed on this basis.

### c. Unactionable Predictions and Opinions

The Moving Defendants next argue that the alleged misrepresentations concerning Parrella's bankruptcy filing in 2008 and previous lawsuits charging fraud against Parrella and ILKB's predecessor entity are unactionable matters of public record. *See supra* Representations [3], [4]. Under New York law, Plaintiffs will have to show they reasonably or justifiably relied on the misrepresentations in order to succeed on their negligent misrepresentation and common law fraud claims. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (N.Y. 2011) ("[A] claim for negligent misrepresentation requires the plaintiff to demonstrate . . . reasonable reliance on the information."); *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. 2011) ("The elements of common law fraud under New York law are . . . justifiable reliance by the plaintiff . . . ."). Reliance is neither justifiable nor reasonable where a plaintiff fails to conduct due diligence into facts not "peculiarly within the [other] party's knowledge." *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 153–54 (N.Y. 2010) (quoting *Schumaker v. Mather*, 133 N.Y. 590, 596 (N.Y. 1892)). Due diligence requires investigation into "matters of public record," which include "lawsuits and bankruptcy proceedings." *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 312 (E.D.N.Y. 2013); *see Alpha GmbH & Co. Schiffsbesitz KG v. BIP Indus. Co.*, 25 A.D.3d 344, 345 (N.Y. App. Div., 1st Dep't 2006) ("[T]he allegedly concealed information, plaintiff's insolvency and dissolution,

were matters of public record that defendant could have discovered by the exercise of ordinary diligence."); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Red Apple Grp., Inc.*, 273 A.D.2d 140, 141 (N.Y. App. Div., 1st Dep't 2000) ("The existence of the litigation that plaintiff alleges defendants should have disclosed was a matter of public record that plaintiff could have been discovered by the exercise of ordinary diligence."). Plaintiffs allege no facts to excuse their failure to investigate Parrella's prior bankruptcy and lawsuits and, therefore, have no actionable fraud or negligent misrepresentation claims based on any misrepresentations related to the same. But those concerning lawsuits involving ILKB's predecessor entity are actionable. The Complaint plausibly alleges that Plaintiffs could not, in the exercise of ordinary intelligence, discover a kickboxing studio franchisor bore any relation to "FC Online Marketing, LLC."

The Moving Defendants also argue that the representations concerning "expected profits, start-up costs, memberships and trial memberships" are unactionable predictions. Def. Mem. at 25; *see supra* Representations [2], [5], [8] – [11], [13] – [16], [18] – [20], [22]. Under New York law, actionable representations "relate to a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate," which is "something which is hoped or expected to occur in the future." *Zanani v. Savad*, 217 A.D.2d 696, 697 (N.Y. App. Div., 2d Dep't 1995); *see Dragon Inv. Co. II LLC v. Shanahan*, 49 A.D.3d 403, 403 (N.Y. App. Div. 1st Dep't 2008). As pleaded, Representations [2], [5], [8], [11], [12], [16], [19], [20], and [22] are historical facts concerning ILKB's business as it then was – for example, many such

representations refer to "all or the average ILKB franchise." They are not predictions and therefore are actionable. *E.g.*, *W. Valley KB Venture, LLC*, 2021 WL 4171918, at *8–9; *Singh*, 2021 WL 3565719, at *7. Representations [9], [10], [13] – [15], and [18], however, refer to what ILKB "would" do in the future – by contrast, they are unactionable prediction statements. *W. Valley KB Venture, LLC*, 2021 WL 4171918, at *9; *Singh*, 2021 WL 3565719, at *7.

The Moving Defendants further argue that Representation [17] is unactionable because "representations about the suitability of the franchise system for absentee ownership clearly qualify as opinion." Def. Mem. at 20. As with predictions, fraud and negligent misrepresentation liability does not arise from opinion statements. *Mandarin Trading Ltd.*, 16 N.Y.3d at 179. But stating that the "[t]he ILKB franchise owner did not have to work full time in the business" is not an opinion; it "uses past tense and conveys that current and past franchisees have acted as absentee owners." *Singh*, 2021 WL 3565719, at *7; *e.g.*, *W. Valley KB Venture, LLC*, 2021 WL 4171918, at *9. Accordingly, Representation [17] is actionable.[3]

In sum, then, the Moving Defendants motion to dismiss the fraud and negligent misrepresentation claims is granted in part and the following Representations are dismissed: [3], [4], [8] – [15], and [18]. Their motion is denied with respect to the rest of the Representations and with respect to Representations [3] and [4] to the extent they concern ILKB's predecessor entity.

---

[3]     Defendants fail to apply any of the above arguments to the Representations [1], [6], [7], [21], [23], [24]. The Court therefore declines to rule on them.

4.     **ACFA**

Plaintiffs' ACFA claim is barred by the statute of limitations.

An ACFA claim is untimely if brought more than one year after the cause of action accrues.  Ariz. Rev. Stat. §§ 12-541(5), 44-1522.  Such a claim accrues "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994) (quoting *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986)); *Croft v. AXA Equitable Life Ins. Co.*, 2018 WL 4007646, at *3 (S.D.N.Y. Aug. 22, 2018) ("An ACFA claim accrues when the plaintiff 'possesses a minimum requisite of knowledge sufficient to identify that a wrong occurred *and* caused injury.'" (emphasis in original) (quoting *Grimmelmann v. Pulte Home Corp.*, 2010 WL 2744943, at *3 (D. Ariz. July 9, 2010))).

"Although determining whether a plaintiff had sufficient facts to place her on inquiry notice is 'often inappropriate for resolution on a motion to dismiss,'" dismissal is appropriate "'where . . . the facts needed for determination of when a reasonable plaintiff of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 362 (2d Cir. 2013) (ellipses in original) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp.*, 318 F.3d 148, 154 (2d Cir. 2003)).  This is the case here: the allegations reveal that Plaintiffs could have discovered, through the exercise of reasonable diligence, the Predecessor Defendants' fraud by the end of 2017. *Gustafson v. Goodman Mfg. Co. L.P.*,, 2014 WL 1669069, at *5 (D. Ariz. Apr.

28, 2014) (dismissing, on Rule 12(b)(6) motion, ACFA claim where "it [was] clear that by at least 2011, plaintiff knew the 'who' and 'what' elements of his ACFA claim.").

Several of the alleged misrepresentations describe a state of affairs different from what the Plaintiffs experienced almost immediately after they opened their studio in April 2017. For example, the Predecessor Defendants allegedly made untrue statements about "build-out expenses" not exceeding $147,500 – the falsity of which could be suspected upon the studio's opening. Compl. ¶¶ 18(c), 20, 27(a). Plaintiffs allege the Predecessor Defendants falsely stated that "most franchisees break even within two to four months of opening," but the Gilbert studio "began losing money rapidly." *Id.* ¶¶ 23(a), 27(c). The Predecessor Defendants misrepresented that they would provide "initial training," which never happened. *Id.* ¶¶ 19(b), 31. They touted the success of their "done-for-you marketing support," which was never performed for Plaintiffs' franchise. *Id.* ¶¶ 19(d), 23(g), 26, 30. Plaintiffs, in the exercise of reasonable diligence, could have learned the truth of these misrepresentations within eight months of opening their studio. At the latest, therefore, Plaintiffs' ACFA claim accrued by the end of 2017. The claim's one-year limitations period expired by the end of 2018. Plaintiffs' ACFA claim, by the time they brought it in arbitration in March 2019 and in this Court in October 2020, was untimely. The Moving Defendants' motion to dismiss the ACFA claim is granted.

### 5.   Tortious Interference

Plaintiffs' tortious interference claim does not pass muster. While Plaintiffs do not expressly say so in their Complaint, their briefing makes clear they assert a

"tortious interference with business relations" claim, otherwise known as a "tortious interference with prospective economic advantage" and not to be confused with a "tortious interference with contract" claim. *Compare* Pl. Opp. at 16 (reciting elements), *with Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (N.Y. 2004) ("We have recognized that inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same); *see Boustead Sec., LLC v. Leaping Grp. Co.*, 2021 WL 3774116, at *7 n.10 (S.D.N.Y. Aug. 25, 2021) ("Tortious interference with business relations is a distinct tort from tortious interference with contract.").

Plaintiffs allege the Predecessor Defendants' "baseless" legal action against them for opening Encore Group Fitness wrongfully interfered with Plaintiffs' business. Compl. ¶¶ 37–39, 79–83; Pl. Opp. at 16. Plaintiffs' claim fails for two reasons.

First, Plaintiffs do not "adequately allege[] specific business relationships with which Defendant[s] allegedly interfered." *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2012); *see* Compl. ¶ 81 (Defendants obstructed "Plaintiffs' potential economic opportunity"). If Plaintiffs contend the Predecessor Defendants interfered with would-be Encore Group Fitness customers, the claim fails. *McGill v. Parker*, 179 A.D.2d 98, 105 (N.Y. App. Div., 1st Dep't 1992) (claim dismissed where plaintiffs "ma[de] only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship"). If Plaintiffs contend the Predecessor Defendants

interfered with their relationship with Encore Group Fitness, it is unclear how they could do so when Encore Group Fitness's separate legal existence is neither pled nor inferable. *See, e.g.*, Compl. ¶ 37 (Plaintiffs "*designed a concept* for a multi-use facility that *would be* called Encore Group Fitness" (emphasis added)).

Second, Plaintiffs allege the act constituting "tortious interference" is Defendants' legal action against Plaintiffs. *E.g.*, Compl. ¶ 38. Such an allegation misapprehends the nature of their tortious interference claim. "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp. v*, 3 N.Y.3d at 192. By alleging only the Predecessor Defendants' conduct toward them, Plaintiffs do not plead a tortious interference claim. *See, e.g.*, *Arnon Ltd v. Beierwaltes*, 125 A.D.3d 453, 454 (N.Y. App. Div., 1st Dep't 2015) (dismissing claim where "the interfering lawsuit was not directed at the [business'] customers so as to induce or cause them to terminate business relations with" the business, but "[r]ather, the suit was directed at [the business] to prevent" it from finding customers).

The tortious interference claim is dismissed.

### 6.    Piercing the Corporate Veil

The Moving Defendants move to dismiss Count VII, which alleges "alter ego, veil piercing and agency liability against ILKB, Parrella, Ferrari, and Healy," because it is not a cause of action under New York law. Def. Mem. at 27. The Moving Defendants are correct: under New York law, "an attempt of a third party to pierce

the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (N.Y. 1993). Accordingly the cause of action is dismissed. But the dismissal as such does not preclude Plaintiffs from pursuing the theory in order to hold Parrella, Ferrari, and Healy personally liable for the acts of ILKB. The relevant factual allegations shall remain in the Complaint. *Meisels v. Schon Fam. Found.*, 28 Misc. 3d 1205(A), at *6 (N.Y. Sup. Ct., Kings Cnty. 2010); *see Intermed, Inc. v. Alphamedica, Inc.*, 2009 WL 5184195, at *9 (D. Conn. Dec. 21, 2009) ("However, even though 'piercing the corporate veil' cannot be maintained as an independent cause of action, [plaintiff] can still recover against [defendant] on a theory of piercing the corporate veil, and the allegations . . . are to remain in the Second Amended Complaint.").

## 7. Successor Liability

As with veil piercing, successor liability under New York law "is not a separate cause of action, but merely a theory for imposing liability on a defendant based on a predecessor's conduct." *Marcum LLP v. Fazio, Mannuzza, Roche, Tankel, Lapilusa, LLC*, 65 Misc. 3d 1235(A), at *1 (N.Y. Sup. Ct., Suffolk Cnty. 2019). Count VIII, as a cause of action, is therefore dismissed. But its factual underpinnings remain in the Complaint, and Plaintiffs may still endeavor to hold ILKB Too, Castellini, and York liable as successors to the extent their predecessors are liable under the other causes of action. *Alesco Preferred Funding VIII, Ltd. v. ACP RE, Ltd.*, 74 Misc. 3d 1230(A),

at *7 (N.Y. Sup. Ct., N.Y. Cnty. 2022) ("[L]iability predicated on these theories may proceed only based on the underlying causes of action."); *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("As such, the Court will treat Plaintiff's 'successor liability' cause of action as simply an assertion that Defendant is liable for the alleged conduct of AMSA, its predecessor.").

The Successor Defendants also argue that Plaintiffs fail to plead facts sufficient to plausibly allege successor liability against them. "As a general rule," New York law does not hold an entity "purchasing the assets of another . . . liable for the debts and liabilities of the seller." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 525 (S.D.N.Y. 2018), *aff'd*, 774 Fed. App'x 714 (2d Cir. 2019). The general rule does not apply, however, to "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 702 (2d Cir. 2009); *see Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244–45 (N.Y. 1983). "Thus, for example, 'when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's . . . liabilities, notwithstanding the traditional rule.'" *Aguas Lenders Recovery Grp.*, 585 F.3d at 702 (2d Cir. 2009) (ellipses in original) (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)).

Plaintiffs plausibly allege successor liability under the "de facto merger" and/or the "mere continuation" exceptions. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003) ("Some courts have observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception."); *e.g.*, *Snowbridge Advisors LLC*, 2022 WL 667606, at *12–13; *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111, at *6–7 (S.D.N.Y. Sept. 9, 2010).

As an initial matter, Plaintiffs plausibly allege "continuity of ownership," which is the "touchstone of the de facto merger concept and thus a necessary predicate." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 150 A.D.3d 490, 490–91 (N.Y. App. Div., 1st Dep't 2017). "Continuity of ownership 'exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets.'" *Id.* (quoting *In re New York City Asbestos Litig.*, 15 A.D.3d 254, 256 (N.Y. App. Div., 1st Dep't 2005)). "Stated otherwise, continuity of ownership describes a situation where the parties to the transaction become owners together of what formerly belonged to each." *Id.* Here, ILKB's founder and owner, Parrella, allegedly retained an interest in its successor ILKB, Too. Compl. ¶¶ 10, 95.

Other indicia of a de facto merger are present. By way of example, the merger in *Burgos v. Pulse Combustion, Inc.* resembles the one at bar. 227 A.D.2d 295, 295–96 (N.Y. App. Div., 1st Dep't 1996). Of note, the *Burgos* successor (i) "purchased almost all of the predecessor corporation's fixed assets and intangibles," (ii) "assumed

a name nearly identical to that of the predecessor corporation," (iii) retained "at least one officer from the predecessor corporation," and (iv) manufactured the "same products . . . at the plants transferred under the purchase agreement." *Id.* The *Burgos* Court held that such facts could establish successor liability. Here, Plaintiffs allege the Successor Defendants (i) purchased "all assets" of ILKB, LLC, (ii) "us[e] the ILKB or iLoveKickboxing name," (iii) retained ILKB, LLC's "officer, director, executive and/or manager" Parrella, and (iv) "continue [ILKB's LLC's] business." Compl. ¶¶ 10, 46, 95; Ex. A to Compl. Plaintiffs, then, have pleaded sufficient facts that, if true, would establish successor liability.

To the extent the Successor Defendants argue successor liability pursuant to a de facto merger requires ILKB's dissolution, New York law holds otherwise. *Holme v. Global Minerals & Metals Corp.*, 63 A.D.3d 417, 418 (N.Y. App. Div., 1st Dep't 2009) (citing *Fitzgerald v. Fahnestock & Co.*, 286 A.D.2d 573, 575 (N.Y. App. Div., 1st Dep't 2001)).

Successor liability is a "highly fact-specific" inquiry that, on the "present record, cannot be resolved with assurance in favor of one party or the other." *Aguas Lenders Recovery Grp.*, 585 F.3d at 703. The motion to dismiss the Successor Defendants is denied.

## CONCLUSION

The Moving Defendants' motion to dismiss for lack of personal jurisdiction is denied as the Complaint plausibly alleges successor liability against the Successor Defendants.

The Moving Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. Plaintiffs' NYSFSA claim is dismissed as time barred. Gould's breach of contract claim is dismissed because he, unlike Dolphin, is not a party to the Franchise Agreement. The fraud and negligent misrepresentation claims survive except as to those arising from Representations [3], [4], [8] – [15], and [18], which either fail to comply with Rule 9(b), relate to public information, or are unactionable predictions. However, the extent Representations [3] and [4] concern ILKB's predecessor entity, they are actionable. Plaintiffs' ACFA claim is dismissed as time barred. The tortious interference claim is dismissed because its lacks the requisite specificity and does not allege conduct directed at a third party. Plaintiffs' veil piercing and successor liability "causes of action" are dismissed, but said dismissal does not preclude Plaintiffs from obtaining these equitable remedies. The Successor Defendants are not dismissed in light of the Complaint's plausible allegations that a de facto merger occurred.


**SO ORDERED.**

Dated: Central Islip, New York                    s/ Denis R. Hurley
       June 9, 2022                                   Denis R. Hurley
                                     United States District Judge