```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ROGER GOULD and DOLPHIN
KICKBOXING COMPANY,
                                              MEMORANDUM & ORDER
              Plaintiffs,                     20-CV-5154 (JS)(JMW)

     -against-

ILKB, LLC, MICHAEL PARRELLA, RYAN
HEALY and SCOTT FERRARI, each
individually, and ILKB TOO, LLC,
DANIEL CASTELLINI and SHAUN YORK,
each as successor by merger to
ILKB LLC

              Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      John D. Giampolo, Esq.
                    Justin Scott Weitzman, Esq.
                    Rosenberg & Estis, P.C.
                    733 Third Avenue
                    New York, New York  10017

For Defendant:      Ellen M. McDowell, Esq.
                    McDowell Law, PC
                    46 West Main Street
                    Maple Shade, New Jersey  08052
```

SEYBERT, District Judge:

ILKB Too, LLC (hereafter, "ILKB2"), Daniel Castellini (hereafter, "Castellini"), and Shaun York (hereafter, "York" and collectively with ILKB2 and Castellini, the "Successor Defendants") move, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), for summary judgment on all claims alleged by Roger Gould, and Dolphin Kickboxing Company, (collectively, "Plaintiffs") in Plaintiffs' First Amended

Complaint (the "FAC"). (See Motion, ECF No. 70.) For the reasons that follow, the Successor Defendants' Motion is GRANTED.

BACKGROUND

I. Material Considered

> Local Rule 56.1(b) requires that:
>
> The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

E.D.N.Y. Loc. Civ. R. 56.1(b). The Second Circuit has emphasized that the requirements of Local Rule 56.1 are mandatory. See Monahan v. N.Y. City of Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) ("In the Southern and Eastern Districts of New York, a party opposing a motion for summary judgment shall file a short and concise statement of the material facts in dispute accompanied by citation to evidence which would be admissible.") (emphasis in original); see also T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) (Observing, the requirements of Rule 56.1 are "strict" and that, under the rule, "[s]hould the nonmoving party wish to contest the assertions contained within a Rule 56.1 statement, the nonmoving party must respond to reach of the statement's paragraphs") (emphasis in original). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the

2

court to conclude that the facts asserted in the statement are uncontested and admissible." T.Y., 584 F.3d at 418 (citing Gubitosi v. Kapica, 154 F.3d 20, 31 n.1 (2d Cir 1998); see also Kalamaras v. County of Nassau, No. 17-CV-1068, 2019 WL 4452281, at *14 (E.D.N.Y. Sept. 16, 2019) (deeming facts in defendants' 56.1 statement admitted for purposes of summary judgment motion since plaintiff "failed to submit a statement containing correspondingly numbered paragraphs responding to each numbered paragraph in . . . [d]efendants' Rule 56.1 [s]tatement" and so, "failed to specifically controvert" those facts) (quotation marks and alterations omitted); Gadsden v. Jones Lang Lasalle Ams., Inc., 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party.")

At the outset, the Court highlights Plaintiffs' 56.1 counterstatement contravenes Local Rule 56.1. Indeed, Defendants' 56.1 Statement contains 27 numbered paragraphs (see Defs' 56.1 Stmt., ECF No. 70-1, in toto, attached to Motion), to comply with Rule 56.1, therefore, Plaintiffs' Rule 56.1 Counterstatement should contain "correspondingly numbered paragraph[s] admitting or denying, and otherwise responding to, each of" Defendants' 27 numbered paragraphs. (See E.D.N.Y. Loc. Civ. R. 56.1(b).) Instead, Plaintiffs have submitted a 56.1 counterstatement which

3

contains seven numbered paragraphs, all of which bear little to no relation to the correspondingly numbered paragraphs delineated in the Successor Defendants' Rule 56.1 Statement (see Pls' 56.1 Counterstmt., ECF No. 70-9, in toto, attached to Motion.)[1]

Consequently, the facts set forth herein are taken from the Successor Defendants' Local Rule 56.1 Statement of Material Facts, and, to the extent those facts are supported by evidence in the record, they are accepted as true.[2] See Vt. Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true, . . . the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law") (citation and internal quotations omitted); see also Giannullo v. City of N.Y., 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating failure to verify assertions in the motion for summary judgment with the record "would derogate

---

[1] The Court further notes much of Plaintiffs' 56.1 Counterstatement inappropriately interjects legal arguments throughout. Such legal arguments are impermissible in a Rule 56.1 Counterstatement and are regularly disregarded. See McFarlance v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020); see also Taveras v. HRV Memt., Inc., No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020) ("Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.")

[2] Where relevant, however, the Court may also cite directly to an underlying document.

the truth-finding functions of the judicial process by substituting convenience for facts").

II. The Parties

"Defendant ILKB, LLC, whose name is an acronym for 'I Love Kick Boxing,' was a fitness franchisor specializing in kick boxing fitness studios." (Defs' 56.1 Stmt. ¶ 1.)

"Michael Parrella" (hereafter, "Parrella") "was the sole manager and director of ILKB, LLC as well as its president." (Id. ¶ 2.)

ILKB2 is solely owned by Castellini and York. (York Dep. Tr., Ex. C, ECF No. 70-4, 13:20-14:8, attached to Motion.)

Castellini is the current CEO of ILKB2. (Castellini Dep. Tr., Ex. B, ECF No. 70-3, 13:13-15, attached to Motion.)

Shaun York is the current COO of ILKB2. (Castellini Dep. Tr., 76:4-8.)

"Roger Gould . . . is an individual who, at all relevant times, resides in and is a citizen of Arizona and is a former franchisee of an [ILKB] studio." (FAC, ECF No. 66, ¶ 4.) "Dolphin Kickboxing Company is an Arizona corporation through which Gould conducted some of the business of the franchise." (Id. ¶ 5.)

III. The Asset Sale Transaction

"On June 26, 2020, ILKB2 entered into an asset purchase agreement . . . with defendant ILKB, LLC" pursuant to which "ILKB2 purchased the assets of ILKB, LLC for $25,000." (Defs' 56.1 Stmt.

5

¶ 3-4.)  As part of the asset purchase, "[w]ith the exception of two narrowly defined liabilities, . . . ILKB2 expressly did not acquire or assume any other liabilities of the Asset Seller", i.e., ILKB, LLC, "or its principal." (Id. ¶ 5.)  Specifically, Section 1.4(a) of the Asset Purchase Agreement states:

> Effective at the Closing, Seller shall assign and Buyer shall assume the Assumed Liabilities. The "Assumed Liabilities" shall mean and shall only consist of liabilities and obligations accruing under the Assumed Contracts in accordance with their respective terms, and shall not include the Excluded Liabilities. The Assumed Liabilities shall be set forth on Annex IV hereof.

(Asset Purchase Agreement, Ex. A, ECF No. 70-2, § 1.4(a), attached to Motion.)  The Asset Purchase Agreement expressly states:

> Anything contained in this Agreement to the contrary notwithstanding, Buyer is not assuming any Liabilities of Seller Parties or the Business other than the Assumed Liabilities, whether or not relating to the Acquired Assets . . . including . . . (vi) Liabilities arising from or relating to any Proceedings to which any Seller Party is a party (or threatened to be made a party).

(Id. § 1.4(b).)  Pursuant to Section 2.1(a), the Asset Purchase Agreement reiterates, "Buyer acknowledges that the claims set forth on Schedule 4.4 will remain with the Seller after the Signing Date and has committed to make reasonable efforts to defend and/or resolve such claims." (Id. § 2.1(a).)

6

IV. <u>ILKB2's Structure Post- Asset Purchase</u>

"Upon confirmation of the Asset Purchase Agreement" Castellini and York, through their ownership of ILKB2, "became the sole owners, principals and managers of the ILKB franchise business." (Defs' 56.1 Stmt. ¶ 8.)

"At no time did defendant Michael Parrella or any other management level employee of ILKB, LLC, the Asset Seller, ever become a management level, or any level, employee of ILKB2." (<u>Id.</u> ¶ 9.) Indeed, Parrella was:

> Required to resign all management level positions he maintained with the Asset seller as part of the transaction and, further, all employee contracts between the Asset seller and its management level employees were included in the list of 'Excluded Assets' that were not purchased or assumed by ILKB2.

(<u>Id.</u> ¶ 10; <u>see also</u> Parrella Resignation Letter, Ex. D, ECF No. 70-5, <u>in toto</u>, <u>attached to</u> Motion.) Likewise, Parrella has no ownership interest in ILKB2. (<u>Id.</u> ¶ 11.)

Post- asset purchase, ILKB2 employed only two employees formerly employed by ILKB, LLC, in non-management position, <u>to wit</u>: an IT employee, and a bookkeeper. (<u>Id.</u> ¶ 13.) Indeed, after completing the asset purchase, Castellini, and York installed an entirely new management system at ILKB2. (<u>Id.</u> ¶ 12.)

Likewise, Castellini and York made numerous other changes to the kickboxing franchise business post- asset purchase. For example, Castellini testified:

7

> [W]e changed . . . the operations manual. We changed the training. We did a refresh of the studios, the branding. We changed the class structures a little bit. We changed the way to market the business. We changed the interaction with the franchisees. We changed . . . the way the support was handled of the franchisees. We changed quite a few things . . . most of the key elements of the business were adjusted and adapted.

(Castellini Dep. Tr., 36:13-25.) Further changes included relocation of the corporate headquarters from New York to Florida, and changes made to the company logo. (Defs' 56.1 Stmt. ¶ 14.)

## PROCEDURAL HISTORY

The FAC presently alleges one cause of action based upon Successor Liability against the Successor Defendants. (See FAC, ¶¶ 94-99.) The Successor Defendants unsuccessfully moved to have this count of Plaintiffs' FAC dismissed on December 28, 2021. (See Motion to Dismiss, ECF No. 33.) In denying the Successor Defendants' dismissal motion, Judge Hurley placed a strong emphasis on the fact the FAC plausibly alleged continuity of ownership since it alleged "ILKB's founder and owner, Parrella, allegedly retained an interest in its successor ILKB[2]." (See Memorandum & Order, ECF No. 38, at 28.)

On June 23, 2022, the Successor Defendants answered Plaintiffs' FAC. (See Answer, ECF No. 40.) Thereafter, the parties proceeded through discovery; the Magistrate Judge set a

8

deadline of February 24, 2023, for paper discovery, and May 5, 2023, for the completion of all fact discovery. (See Jan. 5, 2023 Min. Order, ECF No. 64.)

On October 2, 2023, in accordance with the schedule set by this Court (see July 19, 2023 Elec. Order), the Successor Defendants filed their summary judgment motion, and, bundled together with this motion, their Support Memo (ECF No. 70-7), Plaintiffs' Opposition (ECF No. 70-23), and the Successor Defendants' Reply (ECF No. 70-25.)

## DISCUSSION

I. Legal Standard

   A. Summary Judgment

The Court shall grant summary judgment under Rule 56(a) if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d. 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden of persuasion may be satisfied by either: (1) submitting evidence that negates an essential element of the non-moving party's claim; or (2) by demonstrating the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. Id. Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts and instead offer some hard evidence showing that its version of events is not wholly fanciful." Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted). On a motion for summary judgment the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). Further, while the court "may consider other materials in the record," it "need consider only the cited materials" in ruling on a summary judgment

10

motion. FED. R. CIV. P. 56(c)(3); see also Pennington v. D'Ippolito, 855 F. App'x 779, 782 (2d Cir. 2021) ("[I]n ruling on a summary judgment motion the court need consider only the cited materials in the parties' submissions." (internal citations and alterations omitted)). In reviewing the record, the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). Accordingly, where an issue as to a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. Id.

B. Successor Liability

In New York, "a business entity acquiring the assets from another business generally results in no successor liability." New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 682 (S.D.N.Y. 2015) (quoting City of Syracuse v. Loomis Armored US, LLC, 900 F. Supp. 2d 274, 288 (N.D.N.Y. 2012)). However, New York law recognizes four exceptions to this general principle where: "(1) the successor corporation expressly or impliedly assumed the liabilities of its predecessor; (2) there was a consolidation or de facto merger of the two business entities; (3) the successor is a 'mere continuation' of the predecessor; or (4) the transaction is entered into fraudulently to escape such obligations." DoubleLine Cap. LP v. Construtora Norberto

11

Odebrecht, S.A., 413 F. Supp. 3d 187, 214 (S.D.N.Y. 2019) (quoting Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07-CV-0489, 2007 WL 3253592, at *2 (S.D.N.Y. Nov. 2, 2007)). "The party alleging successor liability 'has the burden of proving facts which bring the case within one of these exceptions.'" Silverman Partners LP v. Verox Grp., No. 08-CV-3103, 2010 WL 2899438, at *3 (S.D.N.Y. July 19, 2010) (quoting Desclafani v. Pave-Mark Corp., No. 07-CV-4639, 2008 WL 3914881, at *3 (S.D.N.Y. 2008)).

The Second Circuit has observed, "the de facto merger and mere continuation exceptions—though routinely listed separately, are often regarded as so similar as to be considered a single exception." Douglas v. Stamco, 363 F. App'x 100, 102 (2d Cir. 2010) (citing Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n.3 (2d Cir. 2003)). "A de facto merger occurs 'when the transaction between the purchasing and selling companies is in substance, if not in form, a merger.'" Silverman Partners LP, 2010 WL 2899438, at *4 (quoting New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 205 (2d Cir. 2006)). The Second Circuit has observed, the "hallmarks" of a de facto merger are:

> (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.

12

Nat'l Serv. Indus., Inc., 460 F.3d at 209.

"Although the court examines all of the foregoing factors, 'continuity of ownership is the essence of a merger,' and the doctrine of de facto merger cannot apply in its absence." Priestly v. Headminder, Inc., 647 F.3d 497, 505-06 (2d Cir. 2011) (quoting Nat'l Serv. Indus., Inc., 460 F.3d at 211); see also Audio Emotion S/A v. McIntosh Grp., Inc., 707 F. App'x 729, 731 (2d Cir. 2017) ("We have recognized that the doctrine cannot apply absent continuity of ownership, which is the essence of a merger.") (quotation marks and citation omitted); Nat'l Serv. Indus., Inc., 460 F.3d at 212 ("[B]ecause continuity of ownership is the essence of a merger, a de facto merger will not be found in the absence of this element.") "Continuity of ownership exists where shareholders of the selling corporation become direct or indirect shareholders of the purchasing corporation." Doktor v. Werner Co., 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011). "Put differently, '[t]he fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) is the "substance" which makes the transaction inequitable.'" H. Daya Int'l, Co., Ltd. v. Do Denim LLC, No. 16-CV-8668, 2022 WL 974382, at *10 (E.D.N.Y. Mar. 31, 2022) (quoting TBA Glob., LLC v. Fidus Partners, LLC, 132 A.D.3d 195, 210 (1st Dep't 2015)); cf. Cargo Partner AG, 352 F.3d at 47 ("It

is, by contrast, the nature of an asset sale that the seller's ownership interest in the entity is given up in exchange for consideration; the parties do not become owners together of what formerly belonged to each.").

II. Analysis

Count Eight of Plaintiffs' FAC makes clear their allegations of successor liability against the Successor Defendants are anchored in the theory of de facto merger. (See FAC, ¶¶ 94-96.)

In their Summary Judgment Motion, the Successor Defendants primarily argue Plaintiffs' de facto merger allegations fail as a matter of law because Plaintiffs cannot show continuity of ownership. (See Support Memo at 9-10.) The Successor Defendants highlight, Castellini's and York's testimony establishes "ILKB2 is now[,] and has always been[,] owned completely by [Castellini and York]". (Id. at 9.) The Successor Defendants aver Plaintiffs have been unable to substantiate their suspicions Parrella, or any other person associated with ILKB, LLC, retained an interest in ILKB2 post- asset sale. (Id.) Additionally, the Successor Defendants stress, "the Asset Purchase Agreement makes it crystal clear that with the exception of two narrow and unrelated liabilities assumed by ILKB2," ILKB2 assumed no other liabilities. (Id. at 9-10.) On the contrary, the

14

Successor Defendants emphasize, "actual and potential litigation against ILKB, LLC and its principals was identified and expressly acknowledged as remaining with the Asset Seller—including the very claims that the Plaintiffs are pursuing [presently]."  (Id.)

Plaintiffs appear to raise a singular piece of "evidence" in support of their continuity of ownership theory,[3] to wit: Parrella's publicly available Linkedin profile indicates he is the "CEO at iLoveKickboxing.com."  (Opp'n at 3, 6-7; see also Parrella LinkedIn Profile, Ex. I, ECF No. 70-18, attached to Motion.)  Plaintiffs also asserts, without citation to evidence, that post- asset purchase ILKB2 retained "at least half the existing employees" of ILKB, LLC, Plaintiffs make no effort to distinguish between management level and non-management level employees.  (Id. at 5.)  Should the Court not credit this "evidence", Plaintiffs contend continuity of ownership is not a necessary element of a de facto merger claim.[4]  (Id. at 7.)

---

[3] As observed by the Successor Defendants, Plaintiffs' alternative, proffered arguments in support of de facto merger, to wit: (1) ILKB2's purchase all of ILKB, LLC's assets; (2) ILKB2's continued use of the "ILKB" and "iLoveKickboxing" brand names; and (3) ILKB2's continued use of the iLoveKickboxing franchise business, do not speak to the continuity of ownership factor.

[4] The Court rejects Plaintiffs' arguments in this regard; indeed, whether continuity of ownership is a necessary element of a de facto merger claim appears to be a well-settled principle of law. (See supra part-I.B.)  The cases Plaintiff cites to support his proposition, i.e., that the broader "substantial continuity" test should apply to the case at bar, are inapposite since they each occur in the FLSA, NYLL, context.  See e.g., Qanouni v. D&H Ladies

15

Here, the summary judgment record is devoid of any evidence by which Plaintiffs could prove Parrella, or any other member of ILKB, LLC, acquired, or had, a continuing ownership interest in ILKB2, post- asset sale. As an initial matter, the Court agrees with the Successor Defendants that Parrella's Linkedin, and Facebook profiles are hearsay if offered for the truth of the matter asserted, i.e., that Parrella is the CEO of ILKB2, and, therefore, cannot be used to defeat summary judgment. Cf. E. Profit Corp., Ltd. v. Strategic Vision US, LLC, 18-CV-2185, 2020 WL 7490107, at *5 (S.D.N.Y. Dec. 18, 2020) (excluding individual's LinkedIn profile "in which he claim[ed] that he [was] a member of the CPPCC and the HKCFF" since such evidence would be hearsay if offered to prove the individual's actual membership of

---

Apparel LLC, No. 18-CV-2763, 2021 WL 9036182, at *12 (S.D.N.Y. Mar. 23, 2021) (stating, "[i]n the FLSA and NYLL context, courts have employed two tests to determine if liability should be imposed on a successor — the traditional test and the 'substantial continuity' test", and, further, that "in deference to the FLSA's broad remedial purposes" courts will "generally appl[y] a broader test than that which would be applicable under New York law" (citing Bautista v. Beyond Thai Kitchen, Inc., No. 14-CV-4335, 2015 WL 5459737, at *3-4 (S.D.N.Y. Sept. 17, 2015) (emphasis added))); Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017) (Finding, "the weight of authority appears to support application of the 'substantial continuity' doctrine to FLSA claims" and observing, "[t]he 'substantial continuity' test is broader than the traditional common-law/New York test" because it "does not require continuity of ownership between the two business.") (emphasis added)). The broader remedial purposes of the NYLL and FLSA are not applicable here, consequently, the traditional test applies, and, thus, Plaintiffs must show continuity of ownership.

those organizations, and no exception to the rule against hearsay applied). Regardless, even if Parrella's social media profiles were admissible, the profiles do nothing to establish Parrella obtained, by virtue of the asset sale, any ownership interest in ILKB2, or that Parrella presently has an ownership interest in ILKB2.[5] Compare H. Daya Int'l, Co., Ltd., 2022 WL 974382, at *12 (finding genuine dispute of material fact as to whether individual had an ownership interest in subject company where plaintiff highlighted evidence including, inter alia, (1) subject company's membership agreement stated that individual's compensation included pre-tax monthly pre-tax profits of $18,000; (2) individual was listed as an owner of the subject company in the subject company's tax forms; (3) there was deposition testimony that individual was a member of subject company; and (4) defendants did not contest individual was listed as a member of subject company but only that he failed to fund his interest in the subject company by failing to make his capital contribution). Plaintiffs present no credible, or admissible, evidence refuting Castellini's and York's sworn testimony that they are the sole members of ILKB2; likewise, Plaintiff points to no evidence in the record disputing Castellini's or York's testimony that neither Parrella, nor any member of his management team, was hired by ILKB2 post- asset sale.

---

[5] Indeed, the printout of Parrella's LinkedIn profile simply shows Parrella holds himself out to be the CEO of iLoveKickboxing.com.

17

On the contrary, Castellini and York both testified ILKB2 installed an entirely new management team post- asset sale, and that ILKB2 retained only two, non-management, employees from ILKB, LLC. This testimony stands uncontradicted by any evidence in the record.

Finally, the Court observes, the Asset Purchase Agreement explicitly provides that in consideration of the asset sale, ILKB2 paid to ILKB, LLC $25,000 in cash, only; no provision of the Asset Purchase Agreement provides that, in consideration of the asset sale, former owners of ILKB, LLC -- including Parrella -- would become members or owners of ILKB2. Under these circumstances, courts in this Circuit have found no continuity of ownership. See e.g., Desclafani, 2008 WL 3914881, at *4 ("Numerous courts have held that this factor is not satisfied where the assets are purchased solely with cash and, thus, none of the predecessor corporation's shareholders become shareholders of the successor corporation as a result of the asset purchase") (collecting cases); see also Doktor, 762 F. Supp. 2d at 499 ("[C]ommon ownership does not exist where, as here, there is a sale of assets for cash.")

In view of the foregoing, the Court finds the Successor Defendants are entitled to summary judgment on Plaintiffs' successor liability claims.

CONCLUSION[6]

For the stated reasons, **IT IS HEREBY ORDERED that** the Successor Defendants' motion for summary judgment on Count Eight of Plaintiffs' FAC (ECF No. 70) is GRANTED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 26, 2024
       Central Islip, New York

---

[6] To the extent not explicitly addressed, the Court has considered the remainder of Plaintiffs' arguments in opposition and finds them to be without merit.